## B. J. JOHNSON *v.* F. W. HUNT.

**Evidence — Peremptory Instruction.**

Where there is no conflict in the evidence and the evidence for defendant. showing a perfect defense, is uncontradicted and unexplained, it is proper to give a peremptory instruction for defendant.[1]

**Statute of Frauds — Parol Sale of Personal Property.**

A parole sale of personal property of more than $50 in value is not. within the Statute of Frauds when the property is delivered to the purchaser.[2]

Replevin by B. J. Johnson against F. W. Hunt to recover possession of a portable steam engine, boiler, and other appurtenances, of the value of $410. From verdict and judgment for defendant plaintiff appeals.

On the trial plaintiff testified that the property belonged to him,. and it was admitted that the property was in the possession of defendant when levied upon. Defendant did not deny that plaintiff

---

[1]

A peremptory instruction should not be given for the defendant if the state of the evidence be such that the court would not vacate a verdict predicated thereof in plaintiff's favor. Rhynes *v.* Jackson Electric Railway, Light & Power Co., 85 Miss. 140.

Where the plaintiff's evidence does not conduce to prove the cause of action the court may instruct for defendant. Such power should not be exercised except in cases where there is no room for doubt. Swan *v.* Insurance Co., 52 Miss. 704.

A peremptory instruction is proper only where all the facts in evidence taken as true, with every just inference from them, fail to maintain the issue. Whitney *v.* Cook, 53 Miss. 551.

In case of conflict in the evidence the view which is most favorable to the party against whom the instruction is asked must be taken as true. Carson *v.* Leathers, 57 Miss. 650.

Where there is a material conflict of evidence, a peremptory instruction should not be given. Richardson *v.* Toliver, 71 Miss. 966; Thrasher *v.* Gillespie, 52 Miss. 840; Cantrell *v.* Railroad Co., 69 Miss. 435; Timberlake *v.* Compress Co., 72 Miss. 323.

Peremptory instruction is improper unless the court on the evidence would set aside a contrary verdict. Bernheim *v.* Dibrell, 66 Miss. 199; Holmes *v.* Simon, 71 Miss. 246.

When the evidence is sufficient to warrant a verdict for a party in any view of it which may be legally taken, a peremptory instruction in favor of his. opponent should not be given. In granting a peremptory instruction, the court assumes as true all testimony tending to establish the issue in favor

had owned the property, but testified that he bought the property and found it in the possession of one E. Johnson. M. D. Graham testified for defendant that plaintiff had sold the property to E. Johnson. This was in no way contradicted or explained by plaintiff's evidence.

The court gave a peremptory instruction for defendant.

Defendant's motion for a new trial was overruled and he appeals.

From the Circuit Court of Scott county.

Affirmed, October 26, 1885.

Attorneys for appellant, S. H. Kirkland, Calhoon & Green, and D. C. Wasson.

Attorney for appellee, J. K. P. Palmer and Huddleston & Nichols.

of the losing party. Railroad Co. v. Boehms, 70 Miss. 11; Holmes v. Simon, 71 Miss. 245; Tribbett v. Railroad Co., 71 Miss. 212.

If there is any evidence upon which the jury might find for the plaintiff it is error to give peremptory instruction for defendant. Lowenstein v. Powell, 68 Miss. 73.

A case should be withdrawn from the jury only where it is free from doubt, where a verdict for plaintiff would not be permitted to stand assuming the truth of the testimony. Railroad Co. v. Doyle, 60 Miss. 977.

2

Parol partition of lands between co-owners followed by occupancy in severalty is valid. Wiley v. Bonney, 31 Miss. 644; Pipes v. Buckner, 51 Miss. 848.

A parol agreement between coterminous owners, fixing an uncertain and disputed boundary between their lands, followed by possession is valid and binding. Archer v. Helm, 69 Miss. 730.

Sale of personal property is ordinarily completed by its delivery to the purchaser. Pierson v. State, 66 Miss. 510.

Verbal sale of cotton worth more than $50 wholly on credit is within the statute unless part of the cotton is delivered. Delivery of samples is a compliance with the statute when they are treated by both parties as part of the property sold and as diminishing the quantity or weight of the property sold to the extent of their own bulk and not as specimens merely. Moore v. Love, 57 Miss. 765.

On a verbal contract for the future delivery of forty bales of cotton of a certain weight and at a certain price, delivery of eight of the bales will satisfy the Statute of Frauds if delivered and accepted as in partial fulfillment of the contract. Stonewall v. Peek, 63 Miss. 342.

Brief of Calhoon & Green:

First. The court erred in instructing to find for defendant.

The plaintiff by his evidence made out a case entitling him to recover. He proved that the property was his; the defendant, not denying the plaintiff's evidence or disputing that the property had been plaintiff's, undertook the affirmative defense of showing that plaintiff had sold to another. The burden of proof was on defendant to establish this, and the defendant thereby became the real plaintiff. Just as if the defendant had confessed and avoided. In such case, he became plaintiff and is entitled to open and conclude. When then the court instructed the jury to find for defendant, it was really instructing to find for the plaintiff. It is never the province of the court to instruct to find for plaintiff. An instruction to find for defendant is usual when the plaintiff fails to make out his case, for the burden of proof being on him, if he fails successfully to bear that burden, no recovery can be had. It is otherwise when the court instructs to find for plaintiff; then as matter of law, the court decides on the weight to be given to the facts proven, which violates section 1714, Code 1880. Such instructions, in legal effect, are equivalent to a demurrer to evidence. It is a power at best to be used with great caution, and only in the clearest cases.

Second. Such instruction, if proper in any case, was improper here.

Plaintiff proved that he was the owner of the property. Defendant introduced Graham, who testified there was a sale by plaintiff to E. Johnson; that the reason he knew there was a sale was that plaintiff and E. Johnson in 1881 rehearsed in his presence the terms of sale and contract made by them in which they said that B. J. Johnson had sold the mill and some other property to E. Johnson. (Record, 17, 18.)

This was all the evidence tending to divest plaintiff's title. It was insufficient. Loose declarations of parties are, at best, poor criterions of facts, and especially when gathered years afterward from the memory of the adverse party. Graham knew nothing of his own knowledge. He says the parties rehearsed the *terms of sale and contract.* He does not attempt to give the " terms of sale and contract." *Non constat* it was a conditional sale with title reserved. Here were *" terms of sale and contract; "* not only a *sale* but also a *contract* in regard thereto. What this contract

was we are not informed? Certain it must have been some limitation upon the contract of sale. The burden was on the defendant to prove that plaintiff's title had been divested. Note how cautious Graham is after stating that the Johnsons rehearsed " in his presence the terms of sale and contract made by them." He continues by not giving the matter rehearsed, viz.: " the terms of sale and contract," but by stating " in which " (i. e., rehearsal) they said " B. J. Johnson had sold the mill and some other property to E. Johnson." This might have been true, and yet it might have been a sale with title reserved, or to vest title upon some other condition. They might have, in the rehearsal, have said there was a sale and yet this would be only a part of the rehearsal, for there were *terms of sale* and a contract. The conclusion of Graham, or rather the recital of a part of what was said, should not be sufficient to prove that the sale was a sale by which plaintiff's title was divested.

Third. The first instruction for plaintiff should have been given.

Brief of S. H. Kirkland:

The evidence clearly showed both title to and possession of the property in controversy to have been in B. J. Johnson, which the law presumed to continue until the contrary is shown by competent testimony. Accepting the testimony of witness M. D. Graham, upon whom the appellee solely relied to prove that the title had passed out of B. J. Johnson as true in every particular, what does it prove? Nothing more than in the opinion of B. J. and E. Johnson there had been a sale of said property by B. J. Johnson to E. Johnson.

This may have been a conclusion of said parties. 55 Miss. 649. And a conclusion which the lower court seems to have adopted without a syllable of testimony showing or tending to show there had been a delivery of said property by B. J. to E. Johnson, or a compliance with the Statute of Frauds by payment or part payment of the purchase money, the property being worth more than $50, or that the contract of sale was in writing and signed by said B. J. Johnson. Code of 1880, § 1295.

Title in another, after plaintiff has shown title in himself, is affirmative matter, and the burden is on him who sets it up to show that the right or title in another is so complete or of such character as to confer the right of immediate possession.

We showed by the testimony of Hoskins (Record, pages 13 and 14), that B. J. Johnson had both title to and possession of the property in controversy, and there is nothing in the whole testimony which by any fair inference disproves these facts; hence for these reasons, we think the instruction clearly erroneous.

Brief of D. E. Wasson:

I shall consider all the assignments together.

" When a fact is once shown to have existed, the law presumes its continuance," and since it was shown by the agreed statement of William Hoskins, that the mill was bought from Hoskins by Johnson and delivered to B. J. Johnson by Hoskins, the law presumes the title to remain in B. J. Johnson until the defendant showed by competent testimony that B. J. Johnson had been divested of the title by a sale or some transfer of the possession of the property by B. J. Johnson. The whole testimony goes to show that B. J. Johnson was owner of the property and the only evidence relied on by the defendant goes to show that B. J. Johnson was owner of the property, unless there was a sale of the property by B. J. Johnson as stated by M. D. Graham and Hunt, the defendant, Graham's testimony, when weighed according to the facts stated by him, divested of all the presumptions of said Graham, fails to show that there was a sale of the property to E. Johnson by B. J. Johnson. Graham states that " the parties rehearsed in his presence the terms of sale and contract made by them in which *they said that* B. J. Johnson had sold the mill and some other property to E. Johnson.

Graham does not state what the terms of the sale were; whether there had been a delivery, or that the contract was in writing, or that any part of the purchase money was paid, and one of these facts was needful to comply with the Statute of Frauds, as it had been shown by the sheriff's return that the property was worth more than $50 and not denied by defendant in his testimony. Code 1880, § 1295.

The court will not assume that there was a sale by plaintiff B. J. Johnson to E. Johnson on the mere say so of the parties; the facts must be stated that the court may judge whether there was a sale, and will not indulge in vague presumptions.

It will not do to say that Hunt's statement " that he found the property in possession of E. Johnson and got some of it at E.

Johnson's house " will make out the sale coupled with Graham's testimony.    The court will observe by the statement of Hunt that he bought the property from M. D. Graham, and not from either of the Johnson's, and neither of the Johnsons stated to Graham (so far as the evidence shows) that the property was ever delivered to E. Johnson, or that anything was done to warrant the court in reaching the conclusion that there had been a sale.   (Pages 17, 18, 19 of the record).

. Plaintiff showed that the title of the property was in him, the value of the same, and rested his case.    It then devolved upon the defendant to show the title in himself or some other one than B. J. Johnson, to warrant a verdict for the defendant; this I contest defendant signally failed to do.

If I am correct in these conclusions, then the court below erred in refusing the instructions of plaintiff, and granting instruction for defendant.    Smith v. Sparkman, 55 Miss. 649.    Code 1880, §§ 1295, 1292.

I contest that the instructions asked by plaintiff and refused by the court stated the *clean written law,* and should have been given and the facts left to the jury to decide.    The court assumed that there was a sale of the property by B. J. Johnson to E. Johnson, and thus assumed the right that should have been left to the jury to say whether the statements of the witness were to be believed by the jury.

If M. D. Graham claimed or had title in the property, why was it defendant's attorneys did not inquire of Graham as to his title or rights in said property, as he would not or did not testify to any title or right to it?    Graham said that at the time of the conversation between B. J. Johnson and E. Johnson, that M. D. Graham & Co. *were* interested in the property.    Mark you!    He (Graham), while on the stand, does not breathe a word that he claimed any interest or title to the property at the bringing of the suit.    The theory of counsel of appellee is contradictory in my judgment.    Counsel argues in one breath that the property was delivered to B. J. Johnson by Hoskins on the order of M. D. Graham. & Co.    In the next breath, counsel say that there was a sale of the property by B. J. Johnson to E. Johnson, and relies on Graham's testimony to show this.    The truth is, the defense cannot escape the confession that there was a sale of the property by Hoskins to B. J. Johnson, and that the title passed

into B. J. Johnson, and that M. D. Graham & Co. were merely to become paymasters to Hoskins, and did pay Hoskins. If it had been otherwise, Graham could have very easily stated it for the benefit of his own interest. Graham clearly recognizes that B. J. Johnson was owner of the property, and to show that B. J. Johnson sold the property, the statement of Graham about what the two Johnsons said is relied on. Coupled with Hunt's statement, Hunt says he bought from Graham. Why is it that Graham is silent about sale to Hunt? When Hunt undertakes to say he found property in possession of E. Johnson, but does not say that E. J. ever gave possession of the property to Hunt. Why all this dodging? I undertake to answer and say, it is to defeat B. J. J. out of his rights. One counsel for appellee says in his brief, that Hunt said E. Johnson *delivered* possession of the property. By reference to Hunt's evidence, it will be seen that Hunt states "he found the property in the posssession of E. Johnson, got some at his (E. Johnson) house," and as to where he got the other the record does not disclose. Another presumption, when Hunt says he found it in the possession of E. Johnson, it might be reasonably inferred that Hunt got the property without the consent of E. Johnson, and more than this, why not as reasonably conclude that E. Johnson was at the time Hunt got the property the agent of B. J. Johnson, which was no doubt true from all inferences. But I do not rely on these doubtful questions, inferences and presumptions for the reversal of the case. I do not contend that the instruction was improperly granted for defendant, and if this is true, then the case should be reversed. (See pp. 17, 18, 19, of record for testimony.)

This certainly was a case where the facts to be decided should have been given to the jury, under proper instructions, and I contend that those asked by plaintiff should have been given, for they certainly announced the law correctly as applicable to the case. As to authorities on the question of sale, see Smith *v.* Spardkman, 55 Miss. 649; section 1295, Code 1880.

It seems to me that plaintiff could have with less violence to the law, asked the court to grant an instruction directing jury to fiind for plaintiff, than one asked for by defendant. I care not whether the theory of plaintiff be that of title or right of possession, it does not alter the plaintiff's right to recover in this case, for he has shown both title and the right to possession. Hunt

shows no right in it.    He fails to show title from any one other than Graham, who by his own testimony shows no right to the property, whatever to the contrary.    Graham's theory is the title vested in E. Johnson, and to retain possession defendant must either show title in some one other than plaintiff, or that he (Hunt) acquired rightful possession, neither of which did he show.    There really was no sale shown to E. Johnson by B. J. Johnson.    If Graham had stopped in his testimony when he said (in answer to the first question) " it had been sold," the court might have indulged in some vague presumption that there had been a sale.    He left no doubt that there was not enough said to constitute a sale.    (Page 17 of record.)

If the title of this property was in B. J. Johnson, at the  bringing of this suit, then Hunt's possession was not rightfully, and hence his possession was unlawful.    Counsel for appellee (Palmer's) brief, page 3, says that " there is no dispute in the testimony that M. D. Graham & Co. were interested in the property, and that there is no dispute in the testimony that appellant sold the property to E. Johnson, and that Hunt bought from Graham and got possession from E. Johnson.    There is a dispute over the question of sale.    We say, that what Graham stated does not show a sale. If this is true, the bottom is out of appellee's case.    There is a dispute as to whether Graham & Co. were interested.    The testimony of Hoskins shows title in B. J. Johnson, and if M. D. Graham & Co. had not been paid by B. J. Johnson, that would deprive plaintiff of the right to possession in this action, under the facts in this case.

Counsel argue that the plea of not guilty admits nothing, but I say that the facts introduced by defendant in effect admits the title to have been in B. J. Johnson, and counsel saw the necessity of introducing testimony to *attempt* to show that the title had passed out of B. J Johnson, another dodge on part of counsel to get rid of plaintiff's title.

The testimony failing to show that the plaintiff had parted with his title, as the evidence of appellee effectually admits, then there should have been a verdict for plaintiff (under proper instructions, such as were asked by appellant).

I have been lenghty, owing to the fact of a hard-working, poor client, being, as I honestly think, defeated of his just rights in the court below, and desiring that the matter should be fully

presented to those who must with the evenly balanced scales of justice weigh the matter for final settlement, in whose judgment I have abiding confidence, and to whose decision I will meekly bow, without words of censure, if decided against my client.

Brief of J. K. P. Palmer:

The appellant's theory of this case seems to be that title is the only question to settle, and for the purpose of proving title, they introduce Hoskins, who says that he delivered the property to appellant upon the order of M. D. Graham & Co., M. D. Graham & Co. agreeing to pay for it. That M. D. Graham & Co. did pay for it. That he would not have delivered the property to appellant except for the order of M. D. Graham & Co., and their agreement to pay for it. Record, p. 13.

M. D. Graham, a witness for defendant in the court below, says that in 1881, long before the bringing of this suit, appellant and one E. Johnson came to him, and rehearsed the terms of a sale of this property, and other property, by appellant to said E. Johnson. Said witness gives as a reason for these parties coming to him and rehearsing the terms of this sale, that M. D. Graham & Co. were interested in the property. (Record, pp. 17 and 18.)

Hunt, appellee, says that he bought the property from M. D. Graham, and that E. Johnson delivered possession to him. (Record, p. 18.)

This is all the testimony in the case. It does not show or tend to show title in appellant. It does not show that the property was wrongfully detained from appellant. It does not show that appellant is legally entitled to the immediate possession of the property. This testimony does not tend to prove either of these acts.

When appellant shows that he got the property from Hoskins upon the order of M. D. Graham & Co., and that they paid for it, the fair and reasonable presumption is that it was purchased for them. If it was otherwise, appellant should have shown it. M. D. Graham says that M. D. Graham & Co. were interested in the property long after this delivery by Hoskins to appellant, to-wit, in 1881.

If the testimony of Hoskins showed that the title passed from him to appellant, and this is all that it does show, defendant shows by the statement of appellant that he sold to E. Johnson. Appel-

lant says that we fail to show such sale as will take it out of the Statute of Frauds. Defendant does not show in the testimony the terms of the sale, but shows that there was a sale made; thus we would expect to find the property in possession of the appellant's vendor. And when possession is shown in E. Johnson, the requirements of the statute are met and complied with. There is not testimony in this case to support a verdict for plaintiff.

It is not disputed in the evidence that appellant received the property from Hoskins, upon the order of M. D. Graham & Co. and their agreement to pay for the same. That M. D. Graham & Co. were interested in the property. That appellant sold the property to E. Johnson. That Hunt bought the property and got the property from E. Johnson.

These being the facts shown, and they failing to make the case for the plaintiff, and there being conflict in the evidence, the result was a legal contention and this being the case, the instruction was correctly given.

Appellant says the statement of Graham and Hunt should have been passed upon by the jury. That the jury should have been allowed to say whether their statements were true. Certainly the jury would not say their statements were false, when there is no evidence, direct or circumstantial, which is in conflict with their statements. They tell a reasonable story, appellant offers no opposing evidence, but permits it to go to the jury undisputed.

Appellant says that his title to the property was admitted by the defense made. I find a plea of not guilty as the only plea, and if this plea admits anything, I have failed to become fully acquainted with this venerable landmark of the law.

Brief of Huddleston & Nichols:

The disputed point in this case seems to us to be whether the testimony tends to prove any *necessary* fact, which, if proven, would authorize the court in allowing a verdict of the jury for the plaintiff to stand.

Admitting for sake of argument of the point that the testimony of W. S. Hoskins proved title of the mill in appellant. The testimony of M. D. Graham that appellant and one E. Johnson said in his presence that they had traded, and the testimony of appellee that he received the property from said E. Johnson, all of which took place subsequent to the purchase from Hoskins,

shows clearly that the property was traded to E. Johnson by B. J. Johnson, and delivered. And the testimony fails to show that B. J. Johnson ever owned or had possession or right of possession of the property after his sale to E. Johnson.

We understand the rule to be that when the testimony of the plaintiff falls so far short of entitling him to the verdict of the jury, that were a verdict rendered in his favor, the court would, on motion of defendant for a new trial, set it aside; then the court should anticipate the ultimate result, and instruct the jury to find for the defendant. We, therefore, contend that in this case, the court below rightly refused the instructions of the plaintiff, and overruled the motion for a new trial.

OPINION.—CAMPBELL, J.:

While we would like to have a fuller development of the facts of this case than the record presents, we do not feel authorized to reverse the case.

It was testified that the plaintiff had sold the property sued for to E. Johnson, in whose possession it was shown to have been before the institution of this action, and the testimony was unexplained and unqualified. A sale imparts a transmutation of title and possession.

If the plaintiff had parted with the title, he had no right to recover.

All questions as to the validity of the alleged sale with reference to the Statute of Frauds is disposed of by the fact that the alleged purchaser had possession of the goods.

*Affirmed.*